**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 00-40133**

---

**DEBORAH ANN GLENN,**

**Plaintiff-Appellee,**

**v.**

**CITY OF TYLER; KYLE RHODES, Tyler Police Officer in his individual capacity; BRIAN TOMLIN, Tyler Police Officer in his individual capacity,**

**Defendants-Appellants.**

---

**Appeal from the United States District Court**
**For the Eastern District of Texas**

---

February 22, 2001

Before JONES and DeMOSS, Circuit Judges, and BARZILAY[*], District Judge.

EDITH H. JONES, Circuit Judge:

Deborah Ann Glenn ("Glenn") sued the city of Tyler, Texas ("the city") and two police officers, Kyle Rhodes ("Rhodes") and Brian Tomlin ("Tomlin"), pursuant to 42 U.S.C. § 1983, under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et. seq.*, and for state law claims. The defendants moved for summary judgment on the issue of the officers' qualified immunity. The

---

[*] Judge, U.S. Court of International Trade, sitting by designation.

district court granted summary judgment on the ADA claim but not on the other claims. The officers and the city timely filed a notice of interlocutory appeal. As to the officers, this court reverses and remands.[1]

## I. BACKGROUND

Glenn's lawsuit is based on the activities surrounding her arrest for family violence assault. Glenn alleges that: (1) Officers Rhodes and Tomlin unlawfully arrested her without probable cause for allegedly assaulting her daughter; (2) she was subjected to an unlawful search and seizure; (3) Officer Rhodes used excessive force by intentionally handcuffing her hands too tightly; and (4) Officers Rhodes and Tomlin violated the ADA. Glenn also presents state law claims of negligent use of tangible objects and malicious prosecution.

The defendants moved for summary judgment, arguing that the officers are entitled to qualified immunity and that the city is thus entitled to summary judgment.[2] Glenn retorted that genuine issues of material fact precluded summary judgment.

The district court granted the defendants' summary judgment motion in part and denied it in part. The court found that there were fact issues as to: (1) whether the officers'

---

[1] We have no jurisdiction to consider the interlocutory order against the city, which cannot claim qualified immunity.

[2] This court need not discuss the city's claim because a municipality does not enjoy immunity from suit under section 1983. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 166 (1993).

2

actions in arresting Glenn were objectively reasonable; (2) the circumstances surrounding Glenn's "seizure"; and (3) the excessive force claim. However, the district court granted summary judgment in favor of the officers for the ADA claim. The district court did not address the defendants' claims of immunity for the state law claims. The court subsequently denied the defendants' motion to alter, amend, or rehear the court's order denying its summary judgment motion. The individual defendants and the city filed a timely notice of appeal.

The district court found that there was no dispute over the following facts. On the day before the incident, Glenn went to her daughter Jennifer Clark's ("Clark") apartment after several unsuccessful attempts to contact her. They got into an argument and the police were called. On the following day, September 29, 1998, Clark went to her mother's home to retrieve some of her clothes. Clark and Glenn again began fighting and Clark called the police. Both the officers and an ambulance were dispatched to Glenn's home. As the officers approached the house, they encountered Glenn, Clark and a family friend, Mr. Rodriguez. Officer Tomlin spoke with Clark and Rodriguez while Officer Rhodes went inside the house to speak to Glenn.

Glenn was upset and crying. She told Officer Rhodes that she did not want her daughter to be arrested. At some point, Officer Rhodes was told that Glenn has multiple sclerosis. After

3

speaking to Glenn, the two officers conferred. Shortly thereafter, Glenn was placed under arrest for "assault family violence," handcuffed and taken to the police station. Glenn was charged with assault, although the charges were later dismissed.

The plaintiff's own summary judgment evidence establishes at least the following facts. On the previous day, when Glenn went to her daughter's house, it was a security guard who called the police. After the police arrived, they told Clark not to contact Glenn but to call them the next day so that they could escort Clark to pick up her clothes at Glenn's house. The next day, Clark called the police from her apartment but they did not come. Then, she went to her mother's apartment and "got into an argument that resulted in some physical contact." Clark called the police and told the dispatcher "something to the effect that that [sic] my mother and I had just gotten into a big fight and that we had beaten the shit out of each other." The police dispatcher asked if they needed an ambulance and Clark said "yes."

When questioned about marks on her body, Clark told the police that the red splotches on her neck were "hickeys" and not bruises or bite marks caused by Glenn. In her initial affidavit, she states that she told the police that her mother pushed her and pulled her earring out. In a supplemental affidavit, Clark later averred that she never told the officers that Glenn had bitten her, assaulted her, or "intentionally" pulled her earring out of her

4

ear, but that she had "said that it was an accident." She states that she was "trying to explain to the officers that my earrings got pulled out while my mother was holding my face in her hands trying to get me to look at her while I was jerking my head back and forth."

Glenn confirms that the two had a "heated argument." During her deposition, she stated that her daughter pushed shelves "over on me" while the two were on the ground. When Officer Rhodes came into the house to speak with her, she was "hysterically crying." Officer Tomlin was outside with Clark and Rodriguez. Glenn stated that she told Officer Rhodes the "entire story," including the fact that another police officer previously told them to call the police before Clark went to Glenn's house to pick up her things. Officer Rhodes informed Glenn that Clark had said that she had blood on her shirt. When Officer Rhodes asked Glenn if she had torn Clark's earring out, she "told him that whenever I put my hand on [Clark's] face and she was fighting me that an earring fell out and it made her ear bleed."

In response to a question from Officer Rhodes about whether Glenn had any blood on her, Glenn told him: "I don't see any. I've got this scratch." Glenn also acknowledged that she informed Officer Rhodes that she and Clark had "got[ten] into it." However, she denied telling Officer Rhodes that she had grabbed Clark by the hair.

5

Glenn also contends that, once arrested, she was mistreated. In support of her excessive force claim, Glenn asserts that Officer Rhodes handcuffed her so tightly that her right hand became swollen. She claims that she complained that the handcuffs were too tight. She also asserts that she was left in an unventilated vehicle which was placed in the "baking sun" for almost an hour before she was taken to jail, despite her pleas that she could not take the heat because of her multiple sclerosis. This, she contends, was an unreasonable search and seizure. The affidavit of Nancy Francis, a friend who saw Glenn in the police car, states that the police car windows were closed, the engine and air conditioner were off, the doors were shut and that the car was in the sun and it was extremely hot. She also states that both policemen were "consoling" Clark but not paying attention to Glenn.

Francis opened the door of the police car and saw that Glenn was crying softly. Glenn allegedly told her that she was very hot, could not breathe, and was getting sick. Francis further states that she asked the officer to help her, but that one of the policemen told her to step away from the car and then slammed the door shut. Francis avers that she told the officer that Glenn had multiple sclerosis, was very ill and that Glenn looked like she was going to faint and could not take the heat of the police car. In response, France states that the officer told her to stay out of it. According to Francis, another neighbor shouted to the

6

policeman that Glenn was sick. That neighbor ran over to Glenn's door and Officer Rhodes also went to the door and "someone" opened it. Glenn, according to Francis, began to dry heave. When Francis tried to tell Officer Rhodes again that Glenn had multiple sclerosis, the officer continued to yell at her.

Glenn admits that the air conditioner was on in the car from the time that they left the house to their arrival at the police station. She also states that when Francis told Officer Rhodes that Glenn was sick, Officer Rhodes asked if she wanted to go to the hospital. She told him that she did not need to go to the hospital. She also did not ask the paramedics who had arrived by ambulance to check on her. In addition, Glenn admits that Officer Rhodes "never yelled at me" and that he did not physically touch her other than placing the handcuffs on her. However, she asserts that "[h]e showed no concern." She claims that Officer Rhodes "taunted" her by telling her that she would have to spend the night in jail.

## II. DISCUSSION

### A. JURISDICTION

Glenn contends that this court does not have jurisdiction over this interlocutory appeal because the order denying summary judgment finds that there are disputed fact issues. This court has jurisdiction to review the district court's decision to the extent that it turns on an issue of law. *See* Lemoine v. New Horizons

7

Ranch & Center, Inc., 174 F.3d 629, 633 (5th Cir. 1999). The materiality of factual disputes may be reviewed but not their genuineness. Wagner v. Bay City, 227 F.3d 316, 320 (5th Cir. 2000). After accepting all of Glenn's factual allegations as true, this court may determine as a matter of law whether the defendants are entitled to qualified immunity. *See* Colston v. Barnhart, 130 F.3d 96, 98 (5th Cir. 1997), *cert. denied*, 525 U.S. 1054 (1998). "If those facts do not materially affect the outcome-i.e., if even under such a factual scenario the officers' actions may be deemed as a matter of law objectively reasonable-the denial of summary judgment is immediately reviewable as a question of law, and qualified immunity should be granted." Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000). On the other hand, if there are disputed factual issues material to qualified immunity, the district court's denial of summary judgment is not appealable. Hale v. Townley, 45 F.3d 914, 918 (5th Cir. 1995). However, "[t]he mere allegation of a factual dispute between the parties will not defeat" a summary judgment motion. Gibson v. Rich, 44 F.3d 274, 276 (5th Cir. 1995). This court reviews the district court's order denying summary judgment de novo. Hale, 45 F.3d at 918.

**B.   QUALIFIED IMMUNITY**

Qualified immunity protects government officials who perform discretionary functions from liability "unless their conduct violates clearly established statutory or constitutional

8

rights of which a reasonable person would have known." <u>Gibson</u>, 44 F.3d at 276. The qualified immunity analysis is a two-step process. First, a court must determine whether the plaintiff has alleged the violation of a constitutional right. <u>Hale</u>, 45 F.3d at 917. Second, if the plaintiff has alleged a constitutional violation, the court must decide if the conduct was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred. *Id*. "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." <u>Goodson v. Corpus Christi</u>, 202 F.3d 730, 736 (5th Cir. 2000). This means that "[e]ven law enforcement officials who 'reasonably but mistakenly [commit a constitutional violation]' are entitled to immunity." *Id.* (quoting <u>Hunter v. Bryan</u>, 502 U.S. 224, 227, 112 S.Ct. 534 (1991)).

**1.   Unlawful Warrantless Arrest Claim**

The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or probable cause. The officers are entitled to qualified immunity for the arrest if "a reasonable person in their position could have believed he had probable cause to arrest" Glenn for assault. <u>Goodson</u>, 202 F.3d at 740. In particular, the "arrest must be based on probable cause, which exists 'when the totality of the facts and circumstances

9

within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" Spiller v. Texas City, 130 F.3d 162, 165 (5th Cir. 1997).

Under Texas law, a police officer may arrest, without a warrant, "persons who the peace officer has probable cause to believe have committed an assault resulting in bodily injury to a member of the person's family or household." Tex. Code Crim. Proc. Ann. art. 14.03(a)(4)(Vernon 1999). A person commits an assault if she "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Penal Code Ann. § 22.01 (Vernon 1994).

Here, Officer Rhodes arrested Glenn only after he ascertained that Glenn and Clark had been physically fighting. He knew that Clark claimed that her mother had pulled her earring out, causing some bleeding. He also knew that the two had, at a minimum, pushed each other, and that the altercation resulted in shelves falling on top of Glenn. In addition, he was aware that the two had been told not to see each other without police accompaniment, and that an ambulance had been called. Finally, Clark had red splotches and blood on her. All of these facts are undisputed. These, alone, are enough for an officer to reasonably believe that probable cause exists under Texas law to arrest Glenn.

10

Pushing, by itself, plainly satisfies the standard for assault. This court is "not willing to second guess the officer . . . who must act on the spur of the moment if that officer's action can be classified as 'arguably reasonable.'" Gibson, 44 F.3d at 277.[3] Officer Rhodes "exercis[ed] reasonable discretion based on his perception of the circumstances on the scene," and this court finds that he was entitled to qualified immunity on the section 1983 claim to the extent that it was grounded on a wrongful arrest. *Id.* at 277-78.

## 2. Unreasonable Seizure Claim

The Fourth Amendment protection against unreasonable seizures may be implicated during an arrest. *See* Valencia v. Wiggins, 981 F.2d 1440, 1444 (5th Cir. 1993). Generally, when probable cause to arrest exists, "the government's interests in enforcing its laws outweigh the suspect's privacy interest and arrest of the suspect is reasonable" under the Fourth Amendment. Atwater v. City of Lago, 195 F.3d 242, 244 (5th Cir. 1999) (cert. granted). "We deviate from this principle . . . only when an

---

[3]     The district court erred in its assessment of the disputed facts, because those facts are not material to the claim. For example, the court points out that Glenn testified that she did not know if she caused Clark's earring to fall out and that she did not tell Officer Rhodes that she pulled it out. The court also stated that Glenn testified that she did not tell Officer Rhodes that she pulled Clark's hair and that she does not recall biting Clark. The officers must make an assessment, based on the totality of circumstances, whether probable cause exists to make an arrest. Whether or not Glenn or Clark told the officers certain things is immaterial if the surrounding circumstances would validly lead a reasonable officer to conclude that Glenn assaulted Clark. In addition, probable cause is not destroyed by a suspect's denial. *See, e.g.*, Hill v. California, 91 S.Ct. 1106, 1110 (1971). Based on the undisputed facts and those facts presented by Glenn, the officers acted reasonably.

arrest is 'conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests." *Id.* (quoting <u>Whren v. United States</u>, 517 U.S. 806, 817, 818, 116 S.Ct. 1769, 1776 (1996)). For example, the Supreme Court has found it necessary to perform a balancing analysis, notwithstanding the existence of probable cause, where a "search or seizure involves deadly force, an unannounced entry into a home, entry into a home without a warrant, or physical penetration of the body." *See id.* (citing <u>Whren</u>, 517 U.S. at 818).

As we have already stated, Officer Rhodes had probable cause to arrest Glenn. After reviewing the undisputed material facts and the plaintiff's evidence, this court concludes that he did not conduct the arrest in an extraordinary manner. *See* <u>Atwater</u>, 195 F.3d at 245. Glenn stated in her affidavit that she was left in an unventilated vehicle which was placed in the sun for almost an hour before she was taken to jail and that her multiple sclerosis was exacerbated by the heat and street. However, as defendants point out, Glenn stated during her deposition that she was put in the police car between 4:27 p.m. and 4:30 p.m. She testified that they then left the house at 4:57 p.m. Glenn also admitted during her deposition that Officer Rhodes asked if she wanted to go to the hospital and that she refused. Both acknowledge that the ambulance was there and that Glenn did not ask for medical attention. Both also agree that the air conditioner

was on during the drive from Glenn's house to the police station. Based on the evidence presented by Glenn, this arrest was not conducted in an extraordinary manner and therefore does not amount to an "unreasonable seizure."

### 3. Excessive Use of Force Claim

Finally, Glenn claims that Officer Rhodes used excessive force. To succeed on an excessive force claim, a plaintiff bears the burden of showing "'(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable.'" Goodson, 202 F.3d at 740 (quoting Williams v. Bramer, 180 F.3d 766, 703 (5th Cir. 1999)). Although a showing of "significant injury" is no longer required in the context of an excessive force claim, "we do require a plaintiff asserting an excessive force claim to have 'suffered at least some form of injury.'" Williams, 180 F.3d at 703 (quoting Jackson v. R.E. Culbertson, 984 F.2d 699, 700 (5th Cir. 1993)). The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed. *Id.* In Williams, for example, this court held that the loss of breath and dizziness suffered when the suspect was allegedly choked while an officer searched his mouth did not amount to an cognizable injury. This court stated that "[w]henever a detainee is physically searched by an officer, a physical confrontation inevitably results" and therefore concluded that fleeting dizziness, temporary loss of

13

breath, and coughing did not rise to the level of a constitutional violation. *Id.* at 704. Where, however, the suspect was choked a second time, this court found that the choking rose to the level of a constitutional violation because the second choking was motivated by malice. *Id.*

Other than placing the handcuffs on Glenn, according to Glenn's own testimony, Officer Rhodes did not touch her. Therefore, her sole contention is that the officer put the handcuffs on her too tightly, causing her right wrist to swell. This court finds that handcuffing too tightly, without more, does not amount to excessive force. There is no allegation here that Officer Rhodes acted with malice.

**4. State Claims**

Appellants contend that they are entitled to immunity for Glenn's two state claims for negligent use of tangible objects and malicious prosecution. Although the appellants raised this issue in their summary judgment motion, the district court neither discussed nor ruled on this issue. "[A]n order denying qualified immunity under state law is immediately appealable as a 'final decision,' provided that 'the state's doctrine of qualified immunity, like the federal doctrine, provides a true immunity from suit and not a simple defense to liability." Cantu v. Rocha, 77 F.3d 795, 803 (5th Cir. 1996). Here, however, there is no final decision from the district court. Accordingly, this court remands

14

this issue to the district court with instructions to review the appellants' claims of immunity regarding Glenn's state law claims.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment is reversed regarding the officers' qualified immunity as to the federal claims. This case is remanded to the district court for a determination regarding the officers' claim of immunity on Glenn's state claims.

**REVERSED** AND **REMANDED**.