# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 5, 2010

No. 09-30712
Summary Calendar

Lyle W. Cayce
Clerk

SHAWN M. LOCKETT; MELANIE C. LOCKETT,

Plaintiffs-Appellants

v.

NEW ORLEANS CITY; PIYUSH JINDAL, also known as Bobby Jindal, in his Official Capacity as Governor of Louisiana; CLARENCE RAY NAGIN, Mayor, in his Official Capacity as Mayor of New Orleans; WARREN RILEY, Superintendent, in his Official Capacity as Superintendent of the New Orleans Police Department; CHRISTOPHER AHNER, Individually and in his Official Capacity as Master Sergeant in the Louisiana Air National Guard; JONATHAN BIEBER, Individually and in his Official Capacity as a member of the Louisiana National Guard; BRANDT ARCENEAUX, Individually and in his Official Capacity as a member of the Louisiana National Guard; LYNN FLETCHER, Individually and in his Official Capacity as a Lieutenant in the New Orleans Police Department; REGINALD GAINS, Individually and in his Official Capacity as a New Orleans Police Officer; TOCKA CLARK, Individually and in her Official Capacity as a New Orleans Police Officer; JOSEPH THOMAS, Individually and in his Official Capacity as a Southern University of New Orleans Campus Police Officer,

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:08-cv-04712

Before BENAVIDES, PRADO, and SOUTHWICK, Circuit Judges.

No. 09-30712

PER CURIAM:[*]

Plaintiffs-Appellants Shawn M. Lockett and his wife, Melanie C. Lockett, seek the reversal of the district court's grant of summary judgment for Defendants-Appellees in this civil rights action, which stems from his arrest based on a traffic violation. We affirm.

I. FACTUAL AND PROCEDURAL HISTORY

In July of 2008, Lockett was driving in his vehicle to a class at the Southern University of New Orleans (SUNO). At the same time, two military police officers, Jonathan Bieber and Brandt Arceneaux, were conducting patrol in the area as members of the National Guard Task Force assisting the New Orleans Police Department (NOPD) with law enforcement duties pursuant to an order issued by Governor Jindal after Hurricane Katrina. Bieber and Arceneaux observed Lockett's vehicle and believed it to be traveling over the speed limit. Based on this observation, the defendants effectuated a traffic stop of Lockett.

Lockett pulled over in a driveway that was in close proximity to both SUNO and the FBI building. Bieber walked to Lockett's vehicle and asked him if he knew how fast he was driving. Lockett responded that he did not know his speed but stated that he was driving with the flow of traffic. Bieber then asked Lockett where he was driving. Lockett stated that he was going to class. Bieber then gestured toward the FBI building and asked Lockett "how would you like it if I went in there and talked to your instructor?" After realizing that Bieber thought he was referring to a class at the FBI building, Lockett told Bieber that he was a student at SUNO. According to Lockett, Bieber responded: "You need to be at SUNO." Lockett was offended by the comment and asked Bieber why he would "say such a thing." In response, Bieber ordered Lockett to exit the vehicle

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-30712

and produce his license, registration and proof of car insurance. After Lockett exited the vehicle, Bieber frisked Lockett.

Lockett provided the documents requested; however, the insurance card in his possession had expired and he did not have proof of current insurance. Using his cell phone, Lockett called his insurance company in an unsuccessful attempt to prove to Bieber that he currently had the required insurance. Lockett also called the emergency number 911, reported that the military police officers had made racial slurs, and requested that NOPD officers be dispatched to the scene. He also called his wife Melanie and requested her assistance at the scene.[1] At about this time, Arceneaux frisked Lockett. A SUNO police officer, Joseph Thomas, stopped at the scene and Lockett complained to Thomas that he was being treated in a hostile and racist manner. Thomas then spoke to Arceneaux and Bieber.

After hearing Lockett request NOPD officers, Bieber called his supervisor, Christopher Ahner, and asked him to meet them at the scene. Ahner then called and requested the presence of Lynn Fletcher of the NOPD. Fletcher in turn called for an additional NOPD patrol car, which brought NOPD Officers Reginald Gains and Tocka Clark to the scene. Once Ahner arrived, he also frisked Lockett, affixed the handcuffs, and placed Lockett in the military police vehicle. By that time, Lockett's wife Melanie had arrived and witnessed her husband being placed in handcuffs.

At one point, NOPD Officer Clark asked Arceneaux to roll down the military vehicle's window because it was hot, and he complied. After the various defendants at the scene conferred, Lockett was arrested for reckless driving. NOPD Officer Gains frisked him and removed the military-issued handcuffs and placed NOPD handcuffs on Lockett. Gains and Clark took custody of Lockett and

---

[1] Melanie Lockett is an attorney but she is not an attorney for the plaintiffs in this proceeding.

delivered him to jail. After about three hours, Lockett was released from jail. Later that day, he made a complaint at the office of the Louisiana National Guard that his wrists were hurt by the handcuffs. Ultimately, Lockett pleaded guilty to a non-moving violation, paid a fine, and the other charges were dismissed.

In October of 2008, Shawn and Melanie Lockett filed a complaint asserting claims arising out of Lockett's arrest against the City of New Orleans; Governor Jindal, in his Official Capacity as Governor of Louisiana; Clarence Ray Nagin, Mayor, in his Official Capacity as Mayor of New Orleans; Warren Riley, Superintendent, in his Official Capacity as Superintendent of the NOPD; Christopher Ahner, Individually and in his Official Capacity as Master Sergeant in the Louisiana Air National Guard; Jonathan Bieber, Individually and in his Official Capacity as a member of the Louisiana National Guard; Brandt Arceneaux, Individually and in his Official Capacity as a member of the Louisiana National Guard; Lynn Fletcher, Individually and in his Official Capacity as a Lieutenant in the NOPD; Reginald Gains, Individually and in his Official Capacity as a NOPD officer; Tocka Clark, Individually and in her Official Capacity as a NOPD officer; and Joseph Thomas, Individually and in his Official Capacity as a SUNO campus police officer. The complaint alleged claims under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, and 1988, as well as numerous supplemental state law claims including assault and battery, false arrest, false imprisonment, malicious abuse of power, intentional infliction of emotional distress.

On May 13, 2009, the "state defendants," Ahner, Arceneaux, Bieber, and Thomas, filed a motion for summary judgment, arguing, among other things, that the claims were barred by qualified immunity. On May 22, the "city defendants," Mayor Nagin, NOPD Superintendent Warren Riley, NOPD Lt. Fletcher, and NOPD Officers Clark and Gaines filed a motion to dismiss, and in the alternative,

No. 09-30712

a motion for judgment as a matter of law. On June 26, the district court issued an 89-page order and reasons granting the state defendants' motion to dismiss and motion for summary judgment. Four days later, the district court granted the city defendant's motion to dismiss and motion for summary judgment. On July 13, the plaintiffs filed a motion for new trial, which the district court denied. The plaintiffs now appeal.[2]

II.    ANALYSIS

A.    Standard of Review

This Court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *See XL Specialty Ins. Co. v. Kiewit Offshore Serv., Ltd.*, 513 F.3d 146, 149 (5th Cir. 2008); *Hirras v. Nat'l R.R. Passenger Corp.*, 95 F.3d 396, 399 (5th Cir. 1996). Summary judgment is proper if the record reflects "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

B.    42 U.S.C. § 1983 claims

1. False Arrest

Lockett contends that the district court erred in finding that the defendants were entitled to qualified immunity with respect to his claim of false arrest. As set forth below, because there is no genuine issue of material fact as to whether the defendants had probable cause to believe that Lockett was driving in violation of the speed limit, his arrest does not violate the Fourth Amendment. The district court therefore properly afforded the defendants qualified immunity regarding his claim of false arrest.

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[2] The plaintiffs do not appeal the dismissal of their claims against the defendants in their official capacities.

No. 09-30712

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set forth a two-step inquiry for resolving government officials' qualified immunity claims:  first, a court must decide whether the facts alleged or shown are sufficient to make out a violation of a constitutional right; second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  *Id.* at 201.  If the official's conduct violated a clearly established constitutional right, then qualified immunity is not applicable.  Additionally, in a recent decision, the Supreme Court explained that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and that judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, ---U.S. ----, 129 S.Ct. 808, 818 (2009).

Lockett concedes that "[a]t the moment of the traffic stop, [the officers] arguably had probable cause to stop [him] for careless driving."  Nonetheless, he contends that because the officers have admitted that they did not believe that careless driving was an "arrestable offense," there was no probable cause to arrest him.  Lockett relies on the following language in *Refendi v. Miller:* "Probable cause exists when the totality of the facts and circumstances *within a police officer's knowledge* at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."   203 F.3d 902, 903 (5th Cir. 2000) (emphasis in brief). Lockett misconstrues this precedent.  That quoted language is referring to facts within the officer's knowledge—not whether the officer was aware of the legal consequences of the facts.

To analyze Lockett's claim, it is important to understand what he does *not* argue.  In his brief, Lockett does not challenge the probable cause the officers had

6

to make the traffic stop based on his speeding. Instead, Lockett asserts that "probable cause for a traffic stop is separate and distinct from the probable cause necessary to affect an arrest when the initial probable cause for the traffic stop is insufficient for the arrest." Lockett is mistaken. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). In *Atwater*, the very minor criminal offense was the plaintiff's failure to fasten a seatbelt. *Id*. at 349. Significantly, in its opinion, the Supreme Court *rejected* Atwater's contention that "it would not be reasonable to arrest a driver for speeding unless the speeding rose to the level of reckless driving." *Id*. at 349-50. Therefore, in the instant case, because the defendants had probable cause to believe that Lockett had been driving in violation of the speed limit, the arrest did not violate a clearly established constitutional right.

Nonetheless, Lockett claims that the defendants conspired to violate his "constitutional rights by stacking traffic violations against him to justify an arrest made in retaliation for complaining of race discrimination and harassment." Our precedent, however, "clearly dictates [that] subjective intent, motive, or even outright animus are irrelevant in a determination of qualified immunity based on arguable probable cause to arrest, just as an officer's good intent is irrelevant when he contravenes settled law." *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000).[3]

In sum, because there is no genuine issue of material fact with respect to whether the defendants had probable cause to believe Lockett was speeding, Lockett has not alleged facts sufficient to make out a claim of false arrest. Thus,

---

[3] We note that because Lockett has raised a fact issue with respect to whether he committed moving violations in addition to speeding, we do not rely on those alleged offenses in finding as a matter of law that the defendants had probable cause to arrest him.

the district court properly found that the defendants were entitled to qualified immunity with respect to the claim of false arrest.

## 2. Excessive Force

Lockett next contends that he has raised a fact issue with respect to his claim of excessive use of force, and thus, the district court erred in finding that the defendants were entitled to qualified immunity. To establish an excessive use of force claim, a plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from the use of force that was excessive to the need and (3) the force used was objectively unreasonable." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (citations and internal quotation marks omitted). Further, the "injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed." *Id.*

Lockett asserts that he sustained an injury to his wrists when the defendants affixed the handcuffs too tightly, causing him pain. Lockett has admitted that he did not complain to the defendants about the pain while he was handcuffed, and the jail's medical intake screening form does not indicate that Lockett complained of pain. However, after being released from the jail, Lockett and his wife met with Major Douget of the Louisiana National Guard, and he complained that the handcuffs had hurt his wrist. Also, several days later, Lockett visited a physician, complaining of pain in his wrists. However, at his deposition, Lockett testified he was not currently under his physician's care for the wrist injury.

Lockett's claim boils down to an allegation that the handcuffs were too tight. Such a claim, without more, does not constitute excessive force: "This court finds that handcuffing too tightly, without more, does not amount to excessive force." *Glenn*, 242 F.3d at 314; *accord Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (rejecting as *de minimis* the plaintiff's claim "that the deputies twisted her arms behind her back while handcuffing her, 'jerked her all

No. 09-30712

over the carport,' and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms.").

Lockett also contends that the defendants' multiple searches of his person constitute excessive use of force. We first note that Lockett fails to allege an injury resulting from the pat downs. Further, Lockett's deposition testimony completely undermines his claim that the searches constituted excessive use of force. When Lockett was asked "[d]o you think there was anything inappropriate in the way [Bieber] searched you?," he responded: "No. It seemed like a standard search to me." Lockett also testified that Arceneaux searched him "[a]ppropriately." With respect to Ahner's search of his person, Lockett testified that Ahner's pat down was similar in manner to the previous two pat downs. Lockett further testified that, at one point, Arceneaux removed the handcuffs and allowed him to stretch his arms before putting the handcuffs back on "in a much more appropriate way, so instead of my arms being between my shoulder blades now they are just in a normal way behind my back." Lockett testified that after Ahner placed him once again in handcuffs, "it was much more comfortable." Subsequently, NOPD Officer Gains took off the handcuffs belonging to the Louisiana National Guard and replaced them with NOPD handcuffs. At that point, Lockett testified he was once again allowed to stretch his arms. Officer Gains also performed a "[g]eneral pat down" on Lockett as he was transferred to the custody of the NOPD.

In light of the above testimony and the lack of a "more than de minimis injury,"[4] we are persuaded that Lockett has failed to make a claim of excessive use of force with respect to the pat downs. Thus, the defendants were properly accorded qualified immunity with respect to the claim of excessive use of force.

---

[4] *Glenn*, 242 F.3d at 314.

No. 09-30712

### 3. Reasonableness of Search and Seizure

Lockett's final § 1983 claim is that the district court erred in granting the defendants qualified immunity because he raised a genuine issue of fact with respect to whether the defendants' conduct was objectively reasonable under the Fourth Amendment.  He argues that the defendants' detention of him for approximately an hour and their multiple searches of his person were objectively unreasonable.

### a. Length of Detention

As an initial matter, as set forth previously, the defendants did have probable cause to arrest Lockett and detain him.  With respect to the length of the detention, because Lockett made three phones calls that lengthened the duration of his detention, we do not believe he has stated a claim that the defendants' conduct was objectively unreasonable.  More specifically, Lockett's failure to have a current proof of insurance card and his subsequent phone call to his insurance company in an attempt to obtain proof of current insurance lengthened the detention.  Lockett also made phone calls to:  (1) the emergency number 911, requesting that NOPD officers meet him at the scene; and (2)  his wife, requesting that she meet him at the scene.  Additionally, we note that the transfer of custody of Lockett from the Louisiana National Guard to the NOPD added to the length of the detention.  In light of these circumstances, we conclude that the one-hour detention is not unreasonable.  Thus, we affirm the district court's grant of qualified immunity to the defendants as to the length of detention claim.

### b.  Multiple Searches

The district court held that defendants' multiple frisks of Lockett constituted illegal searches under Supreme Court precedent because there was no evidence that the defendants had a reasonable suspicion that Lockett was armed. The district court concluded that Lockett had alleged facts sufficient to

10

No. 09-30712

constitute a violation of the Fourth Amendment, thus satisfying the first prong of the qualified immunity test. Nonetheless, the district court granted the defendants qualified immunity because it found that Lockett did not satisfy the second prong, which requires that the constitutional right was clearly established.

With respect to whether the defendants' searches of Lockett's person violated a clearly established right, the district court held as follows:

> Given the unique circumstances of this case, as well as the expressly open question in the Fifth Circuit of whether and to what extent the strictures of *Terry [v. Ohio,* 392 U.S. 1 (1968)], apply to probable cause traffic stops for arrestable offenses, the Court finds that the MP Defendants are entitled to qualified immunity as to Lockett's *illegal search* claims under *Terry*, as the right at issue was not clearly established in light of the circumstances of this case.

The district court apparently was referring to this Court's recognition that "at least one of our sister circuits has recently suggested that different constitutional standards may apply to stops based on probable cause." *United States v. Brigham*, 382 F.3d 500, 506 n.4 (5th Cir. 2004) (en banc).[5] We find it unnecessary to address the first prong because we agree with the district court that it is not clearly established that the defendants' searches of Lockett's person were objectively unreasonable.

Here, the defendants had probable cause to stop Lockett based on their belief that he was speeding. As Lockett concedes, Bieber initially misunderstood Lockett to be stating that he was affiliated with the FBI. Lockett testified that Bieber's statement that Lockett "need[ed] to go to SUNO" disturbed him and that he asked Bieber "why [Bieber] would say such a thing?" Lockett concedes that he could not provide a current proof of insurance card and made a phone call to

---

[5] The analysis in *Brigham* did not involve a traffic stop based on probable cause. 382 F.3d at 506 n.4.

11

his insurance company in an attempt to obtain the required proof.[6]   Lockett admits that he called "911" and informed the operator that the military police were "making racial slurs" and requested NOPD officers "because the situation looks like it's getting out of hand."  Lockett then called his wife and asked her to meet him at the scene.  As requested, NOPD officers and Lockett's wife arrived on the scene.  In view of the defendants' initial misunderstanding regarding Lockett's FBI affiliation and Lockett's multiple phone calls requesting assistance of his attorney-wife and the presence of law enforcement officers from the NOPD in addition to the Louisiana National Guard at the scene, this was an *unusual* traffic stop.  "The reasonableness of a Fourth Amendment search depends on the circumstances under which the search was conducted." *United States v. Garcia-Garcia*, 319 F.3d 726, 731 (5th Cir. 2003).

More to the point, the Supreme Court has held that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *United States v. Robinson*, 414 U.S. 218, 235 (1973).[7]  We note that, like the instant case, *Robinson* involved an arrest based upon probable cause that a traffic violation had occurred.  Today we make no attempt to set forth the state of the law in this Circuit regarding the limits on searching an arrestee's person during a traffic stop based on probable cause.  Suffice it to say that it was not clearly established that the defendants' searches of Lockett's

---

[6]  La. Rev. Stat. 32:861.

[7]  We note that *Robinson* has been clarified; however, it is a portion of the holding that does not directly apply to the instant case.  *See Arizona v. Gant*, --- U.S. ----, 129 S.Ct. 1710, 1713 (2009).  In *Gant*, the Supreme Court held that police officers may not conduct an unwarranted search of the passenger compartment of a vehicle unless "it is reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest."  *Id.* at 1713.

person were objectively unreasonable under the facts surrounding this arrest.[8] Thus, we affirm the district court's grant of qualified immunity to the defendants as to this claim.

### C.    42 U.S.C. §§ 1985, 1986 claims

Lockett contends that the district court erred in dismissing his claims under § 1985.  Section 1985(3) prohibits, among other things, conspiracies to deprive any person equal protection of the laws.  To state a claim under § 1985(3), a plaintiff must allege facts demonstrating (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or a deprivation of any right or privilege of a citizen of the United States.  *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994).  Additionally, the conspiracy must also have a racially based animus.  *Id.* at 653.

Lockett asserts that the defendants conspired to deprive him of his constitutional rights based on his race and that the district court erred because he created a genuine issue of fact with respect to this claim.  Lockett points to the following statement defendant Bieber made to Lockett:  "You need to be at SUNO."  From this short statement, Lockett testified that he understood Bieber meant that:  "SUNO being an African-American university and him telling me that I need to go there as a substandard school that obviously he was insinuating that an African-American school was a substandard school."

We agree with the district court that Bieber's statement as alleged by Lockett does not demonstrate the racial animus needed to raise a genuine issue of material fact.  This conclusion is supported by the undisputed fact that,

---

[8]  In a dissenting opinion, Justice O'Connor believed that, as a result of the majority opinion in *Atwater,* 513 U.S. 318, the Fourth Amendment would allow a police officer to arrest and search a driver if the officer has probable cause to believe that a traffic violation has occurred.  532 U.S. at 372 (O'Connor, J., dissenting) (citations omitted).

although the driveway upon which the traffic stop occurred lead both to the FBI building and SUNO, when Lockett told Bieber he was going to class, Bieber assumed Lockett meant he was in training with the FBI—not SUNO. Moreover, as set forth above, the defendants had probable cause to stop and arrest Lockett. He was not detained for an unreasonable length of time and the defendants' pat-down searches of him have not been shown to have violated clearly established rights. Indeed, his previously set forth deposition testimony describing the defendants' treatment of him during the searches (and adjustment of his handcuffs) undermine any allegation of an act intended to injure him. We conclude that he has not demonstrated facts sufficient to demonstrate a conspiracy to deprive him of equal protection and the required act in furtherance of the conspiracy that caused injury or deprivation of any right. We therefore affirm the district court's grant of summary judgment in favor of the defendants with respect to Lockett's § 1985(3) claim.

Lockett also asserts a claim under § 1986, which provides that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 . . . are about to be committed, and having power to prevent or aid . . . neglects or refuses so to do . . . shall be liable to the party injured." Having failed to demonstrate a claim under § 1985, by definition Lockett cannot sustain a claim under § 1986. *Galloway v. State of La.*, 817 F.2d 1154, 1159 n.2 (5th Cir. 1987).

### D.    State law claims

Lockett also contends that the district court improperly dismissed his state claims as a matter of law. The only challenge that he adequately raises is that the district court improperly held that the military police were immune under Louisiana law. Lockett contends that under Louisiana law, the military police should not have been granted immunity. Lockett relies on the following statutory language:

No. 09-30712

> This Section is not intended to prevent Civil Code Article 2320 or other such laws from imposing master-servant liability on the state, or to prevent Civil Code Articles 2315 et seq. generally from imposing liability in circumstances to which such codal articles and/or laws would otherwise impose liability for damages caused by the offenses or quasi offenses of members of the National Guard committed within the course and scope of their National Guard duties when the Federal Tort Claims Act does not apply.

La. Rev. Stat. 29:23.1. However, as stated by the district court, that statute expressly applies only to causes of action that arise during the time a National Guard member is in training or the member's status has not yet been activated.

The district court granted immunity based on the following statute, which provides as follows:

> No officer or other member of the military forces of this state shall be indicted, prosecuted, or sued for any injury to any person or property performed or committed by him while in the active service of the state of Louisiana in the course of the business of the military forces of this state as required of him by this Part.

La. Rev. Stat. 29:23. In his brief, Lockett does not dispute that the military police defendants were in the course of the business of the military forces of Louisiana during the arrest at issue. Accordingly, the district court properly found that § 23 applied and granted the military police qualified immunity.

### E.    Bystander claim

Lockett's final claim is that the district court improperly dismissed Melanie Lockett's bystander claim brought pursuant to La. Civ. Code art 2315.6, which allows a spouse "who view[s] an event causing injury" to his or her spouse to recover damages for mental anguish or emotional distress. More specifically, "the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable." *Id.*

15

No. 09-30712

We agree with the district court that Lockett has not raised a genuine issue of material fact regarding whether Melanie witnessed Lockett suffer any injury that one can reasonably expect would cause her severe, debilitating distress. Thus, the district court properly denied Lockett relief on this claim.

## III.  CONCLUSION

For the above reasons, he judgment of the district court is AFFIRMED.