## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20245

United States Court of Appeals
Fifth Circuit

**FILED**

November 29, 2018

Lyle W. Cayce
Clerk

BENEDICT EMESOWUM,

      Plaintiff - Appellee

v.

EDUARDO CRUZ; KIET TO,

      Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-2822

Before HIGGINBOTHAM and HIGGINSON, Circuit Judges.*

STEPHEN A. HIGGINSON, Circuit Judge:**

Pro se plaintiff Benedict Emesowum sued defendant Officers Eduardo Cruz and Kiet To of the Houston Police Department pursuant to 42 U.S.C. § 1983, alleging excessive force, unlawful detention, and unlawful search in

---

\* Judge Edward C. Prado, a member of our original panel, retired from the court on April 2, 2018, to become His Excellency the United States Ambassador to the Argentine Republic. He therefore did not participate in this matter, which is decided by a quorum. *See* 28 U.S.C. § 46(d).

\*\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

violation of the Fourth Amendment. The officers moved for summary judgment on grounds of qualified immunity. The district court denied the motion, and the officers brought this interlocutory appeal. We affirm in part and reverse in part.

I.

A.

On July 20, 2015, shortly after 11:00 p.m., Houston police received a 911 call about a vehicle burglary in progress in a parking lot. The caller described a black male breaking into a tan Toyota Corolla. Officer Eduardo Cruz of the Houston Police Department responded to the call.

When Cruz arrived on the scene, Benedict Emesowum was cleaning the window of his Mercedes-Benz. According to Cruz, Emesowum was "holding an object in his hand and motioning up and down on the driver's side window of the vehicle which was suspicious, because it looked as if he was trying to break into the vehicle late at night." Cruz parked, exited his police car, and immediately placed Emesowum in handcuffs. Cruz concedes that Emesowum complied with his commands. Kiet To, another Houston police officer, arrived on the scene shortly after Cruz detained Emesowum.

According to Emesowum, Cruz searched Emesowum after handcuffing him and removed a wallet from Emesowum's back pocket. Cruz then "dragged and pushed" Emesowum to Cruz's police car. Cruz emptied the contents of Emesowum's wallet on the trunk of the police car. While Cruz searched Emesowum's wallet, Emesowum stood handcuffed by the police car with his car keys in his hand. Without first asking Emesowum for his keys, To attempted to "pry" Emesowum's keys from his hands. Emesowum refused to release his keys, and To said "I will slam you on the concrete if [yo]u don't let go of the keys." Cruz threatened Emesowum with a "beating" if he did not

release the keys. To then forced the keys from Emesowum's hand, cutting Emesowum in the process.

Cruz placed Emesowum in the back of his police car. While Emesowum was in the car, Cruz ran a computer warrant search and To unsuccessfully attempted to open Emesowum's car using the key. To then asked Emesowum, the supposed burglar, to explain "how the vehicle is normally opened." Emesowum responded that the key's remote did not work because "the car battery [had] been disconnected," which meant that To would "ha[ve] to open the vehicle from the passenger side with" with the physical key because "Mercedes Benz vehicles such as [Emesowum's] model did not have [a] manual key entrance on the driver door." After To unlocked the car with the key, both officers searched it.

According to To, he searched areas of the car that would typically contain ownership documents, including the sun visor, the glove compartment, and under the driver's seat. After the search turned up empty, the officers released Emesowum. The officers assert, and Emesowum does not dispute, that Emesowum was detained for approximately twenty minutes. No party suggests that Emesowum consented to any search.

B.

Proceeding pro se, Emesowum sued the City of Houston, its police chief Charles McClelland, Cruz, and To in the United States District Court for the Southern District of Texas. Emesowum alleged excessive force, unlawful detention, and unlawful search under 42 U.S.C. § 1983.

The defendants jointly moved for summary judgment. The district court granted summary judgment on Emesowum's claims against the City and McClelland and on any state law claims against Cruz and To. The court denied the motion as to Emesowum's § 1983 claims against Cruz and To. In its order,

No. 17-20245

the district court stated generally that the summary judgment evidence created a genuine dispute of fact regarding Cruz and To's entitlement to qualified immunity, but did not specify particular facts. Cruz and To appealed, invoking our jurisdiction under the collateral order doctrine. *See generally Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We remanded to the district court with instructions to specify the genuinely disputed facts that precluded entry of summary judgment. The district court identified the following four facts:

> a) the plaintiff informed Officer Cruz, when Officer Cruz approached during the handcuffing and throughout the ordeal, that he owned the vehicle [and] that he was attempting to repair it;
> b) Officer Cruz moved from a "pat down" frisk for weapons, after handcuffing the plaintiff, to performing a record search to determine whether the plaintiff had outstanding warrants;
> c) Officer Cruz knew shortly after handcuffing the plaintiff that the plaintiff was not committing a burglary and that the vehicle belonged to him; and,
> d) Officer Cruz refused to remove the handcuffs from the plaintiff, and return[ed] the plaintiff's wallet and keys only after he concluded the record[] search for warrants.

II.

Under the collateral order doctrine, a government official may immediately appeal the denial of a motion for summary judgment based on qualified immunity. *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc). Our review in these cases is limited to issues of law; we have no jurisdiction to second guess whether a genuine dispute of fact exists. *Id.*; *Johnson v. Jones*, 515 U.S. 304, 313 (1995). In other words, "we can review the *materiality* of any factual disputes, but not their *genuineness*." *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc) (quoting *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000)). A fact is material if it "*might affect* the outcome of the suit under governing law." *Bazan ex rel. Bazan v. Hidalgo Cty.*,

4

246 F.3d 481, 489 (5th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). We review the district court's materiality determination de novo. *Melton*, 875 F.3d at 261.

The plaintiff has the burden to rebut a government official's good-faith assertion of qualified immunity. *Id.* To prevail, Emesowum must show that: (1) "the official violated a statutory or constitutional right," and (2) "the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). Because Emesowum is the non-moving party, we view all facts and inferences in the light most favorable to him. *Id.*

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775–76 (2015)). Accordingly, although we do not "require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). Because the question is whether the official had fair notice, we look only to the law as developed at the time of the conduct. *Id.*

## A.

We begin with Emesowum's contention that his detention violated the Fourth Amendment's protection against unreasonable searches and seizures.[1]

---

[1] "To be liable under § 1983, [an officer] must have been personally involved in the alleged constitutional deprivation or have engaged in wrongful conduct that is causally connected to the constitutional violation." *Turner v. Lieutenant Driver*, 848 F.3d 678, 695–96 (5th Cir. 2017). Although Cruz handcuffed Emesowum and placed him in the back of the patrol car, the officers' joint briefing before this court does not distinguish between the officers' roles or dispute the District Court's implicit conclusion that To was "personally involved" in Emesowum's detention..

To be "reasonable," a warrantless arrest must ordinarily be supported by probable cause. *Kaupp v. Texas*, 538 U.S. 626, 630 (2003). Cruz and To do not argue that they had probable cause to arrest Emesowum.

But not all detentions are arrests, and not all detentions must be based on probable cause. "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). To fall within this "limited exception" to the usual probable-cause requirement, an investigative detention, or *Terry* stop, "must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 498, 500 (1983). Whether any particular stop is reasonable varies with the facts on the ground. *Id.* "This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.* at 500; *see also United States v. Sharpe*, 470 U.S. 675, 686 (1985) ("[W]e consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."); *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) ("Courts . . . inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop.").

Here, even if the officers had reasonable suspicion to detain Emesowum, the district court, viewing the facts in the light most favorable to Emesowum, determined that the duration of his detention exceeded the permissible boundaries of a *Terry* stop. We must, as noted, accept the district court's determination of genuine issues of fact, here that the officers knew shortly after handcuffing Emesowum that he owned the Mercedes Benz and was *not*

attempting to burglarize it. The officers found the car keys in Emesowum's hand and then asked his advice on how to open it. Once reasonable grounds for suspecting that Emesowum was burglarizing the car were dispelled, the "purpose of the stop" was completed. *Royer*, 460 U.S. at 500. Yet, on the facts identified by the district court, the officers kept Emesowum handcuffed in the back of Cruz's police cruiser while they searched for ownership papers, despite knowing "that the vehicle belonged to him." Such continued detention is unreasonable under the Fourth Amendment. *See Johnson v. Thibodaux City*, 887 F.3d 726, 734 (5th Cir. 2018) (investigative detention that "lasted longer than necessary to effect the purpose of the stop" was unlawful); *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir. 2001) ("[O]nce an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion."); *see also Royer*, 460 U.S. at 498 (a person "may not be detained even momentarily without reasonable, objective grounds for doing so").

It was clearly established at the time of this incident that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500; *see also Turner v. Lieutenant Driver*, 848 F.3d 678, 693–65 (5th Cir. 2017) (reversing grant of motion to dismiss on qualified immunity grounds where detention amounted to warrantless arrest); *Freeman v. Gore*, 483 F.3d 404, 413–14 (5th Cir. 2007) (affirming denial of summary judgment based on qualified immunity in § 1983 suit for unlawful arrest); *United States v. Brigham*, 382 F.3d 500, 510 (5th Cir. 2004) (en banc) (collecting cases holding that continued questioning when "there remained no reasonable suspicion of wrongdoing" unconstitutionally prolonged detentions). At the time of Emesowum's detention, no reasonable officer could have concluded that the Fourth Amendment permitted detaining

a person in handcuffs in the back of a police cruiser after the officer's previously reasonable suspicion had been dispelled, especially when the detention was extended to give time for a search of the person's car that was, as we explain below, itself unlawful. *See Valadez*, 267 F.3d at 398 (detention became unlawful once suspicion was dispelled). Accordingly, the genuine disputes of fact are sufficient to meet Emesowum's burden to overcome the officers' assertion of qualified immunity on his claim of unlawful detention.

B.

Emesowum also contends that he was subjected to an unconstitutional search when both officers searched his car. "A warrantless search is presumptively unreasonable unless it falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Guzman*, 739 F.3d 241, 245–46 (5th Cir. 2014) (citing *United States v. Karo*, 468 U.S. 705, 717 (1984)). One exception permits police to search a car if they have probable cause to believe it contains contraband or evidence of a crime. *Florida v. White*, 526 U.S. 559, 563–64 (1999); *United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993). As noted, the officers make no argument that they ever had probable cause to believe Emesowum was burglarizing the Mercedes Benz.[2] Nor, on these facts, could we find that the officers had probable cause at the time they searched the car.

Probable cause to search a car exists when "trustworthy facts and circumstances within the officer's knowledge . . . would cause a reasonably prudent man to believe the car contains contraband [or evidence]." *Guzman*, 739 F.3d at 246 (quoting *United States v. Banuelos–Romero*, 597 F.3d 763, 767

---

[2] The officers have also forfeited any argument that the search of the car conceivably could have been justified as an extended *Terry* "frisk" for weapons. *See Michigan v. Long*, 463 U.S. 1032, 1051 (1983).

(5th Cir. 2010)). Officer To was able to enter the car only with the key he took from Emesowum's hand and Emesowum's help describing how to unlock the car. Because Emesowum showed both the means and specialized knowledge required to unlock his car, no reasonably prudent person would have taken Emesowum for a burglar or expected to find evidence of a burglary in Emesowum's locked car. Because the officers lacked probable cause to search Emesowum's car, the search was unreasonable under the Fourth Amendment.

As the district court held, Emesowum has also met his burden to overcome the officers' assertion of qualified immunity. It has long been clearly established that police may not search a car for evidence absent probable cause or consent. *See, e.g.*, *Mack v. City of Abilene*, 461 F.3d 547, 555–56 (5th Cir. 2006). "[L]aw enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)). But "a qualified immunity defense cannot succeed where it is obvious that a reasonably competent officer would find no probable cause." *Mendenhall*, 213 F.3d at 230 (quoting *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).

The officers do not assert that, given the facts in the summary judgment record, a reasonable officer could have believed that probable cause existed to search Emesowum's car. Rather, the district court held—and we have no jurisdiction to reconsider—that a jury could find that Cruz knew before searching the car that Emesowum owned the car and was not trying to burglarize it. It is obvious that no reasonable officer could conclude that the totality of the circumstances—including that Emesowum had the keys to the car and knew how to unlock it—gave rise to probable cause to believe the car

contained evidence of a crime. Cruz and To are therefore not entitled to qualified immunity on Emesowum's unlawful-search claim.[3]

## C.

Finally, we consider Emesowum's claim for excessive force. "To prevail on an excessive force claim, a plaintiff must show '(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable.'" *Windham v. Harris Cty.*, 875 F.3d 229, 242 (5th Cir. 2017) (quoting *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017)). Emesowum identifies two relevant uses of force[4]: (1) Cruz "dragged and pushed" Emesowum from near his car to near Cruz's police car, and (2) To forced Emesowum's keys from his hand. On the record before us, even with the supplemental memorandum of the district court, neither alleged use of force is sufficient to overcome the officers' qualified immunity.

Emesowum's assertion that Cruz dragged and pushed him is insufficient to create a material issue of fact. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Emesowum gives no detail about

---

[3] We also note that, in his opposition to the officers' motion for summary judgment before the district court, Emesowum challenged Officer Cruz's initial search of his person and search of his wallet. Emesowum's terse descriptions of these searches in his affidavit fail to show a violation of clearly established rights. *See United States v. Vickers*, 540 F.3d 356, 362–63 (5th Cir. 2008) (frisk of suspect detained on suspicion of burglary was reasonable); *United States v. Brown,* 366 F.3d 456, 461 (7th Cir. 2004) ("[A]n officer may check an individual's identification in his wallet during a Terry stop."). The officers are therefore entitled to qualified immunity for these searches, and we need not inquire further. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[4] To the extent that Emesowum makes the conclusory assertion that the officers used excessive force in handcuffing or verbally threatening him, these claims fail. *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (holding that even "handcuffing too tightly, without more, does not amount to excessive force"); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983.").

the level of force used to direct him to the police car. Without more, Emesowum has failed to meet his burden to show that pushing and dragging him was objectively unreasonable under the circumstances.

The same is true of To's forcible removal of the car key from Emesowum's hand. "During an investigation, police officers may 'take such steps as [a]re reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" *Allen v. Cisneros*, 815 F.3d 239, 246 (5th Cir. 2016) (quoting *United States v. Campbell*, 178 F.3d 345, 348–49 (5th Cir. 1999)). We find no caselaw clearly establishing that forcing an object that a detainee refuses to release out of his hand, even when causing a cut, is an objectively unreasonable use of force.

### III.

The district court's denial of Officers Cruz and To's motion for summary judgment on Emesowum's claims of unlawful detention and unlawful search is AFFIRMED. The district court's denial of the officers' motion as to Emesowum's claim for excessive force is REVERSED.

11