# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40611
Summary Calendar

United States Court of Appeals
Fif h Circuit

**FILED**
January 12, 2017

Lyle W. Cayce
Clerk

BRANDY HAMILTON; ALEXANDRIA RANDLE,

       Plaintiffs—Appellees,

v.

AARON KINDRED,

       Defendant—Appellant.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:13-CV-240

Before HIGGINBOTHAM, PRADO, and HAYNES, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Brazoria County Sheriff's Office Deputy Aaron Kindred appeals the district court's denial of qualified immunity in this case involving the roadside body cavity searches of two women during a traffic stop. This case arises from an investigatory traffic stop in 2012. Three officers were involved in the incident. The two Department of Public Safety ("DPS") officers, Nathaniel Turner and Amanda Bui, have reached settlement agreements with Plaintiffs Brandy Hamilton and Alexandria Randle. The question presented by this case is whether the third officer at the scene, Deputy Kindred, is liable under 42 U.S.C. § 1983 as a bystander for not intervening to prevent the body cavity

No. 16-40611

searches. Because material issues of fact remain, we do not have appellate jurisdiction over this interlocutory appeal. Accordingly, we DISMISS.

## I. BACKGROUND

### A.    Factual Background

On Memorial Day weekend in 2012, Hamilton and Randle were pulled over by DPS Officer Turner for speeding. Turner smelled marijuana and asked the women to exit the vehicle. Hamilton was wearing a bikini bathing suit, and Randle was similarly dressed. Turner did not allow the women to cover themselves before exiting the vehicle. He used his radio to request help from local law enforcement and a female officer to conduct a search of the women. On the radio, Turner stated that the car smelled like marijuana and that one of the women "had the zipper open on her pants, or Daisy Duke shorts, whatever they are." Turner handcuffed and separated the women before ordering Hamilton to sit in the front passenger seat of his patrol car. He then conducted a search of the vehicle. When Kindred arrived, Turner asked him to identify the drivers of several other cars that had arrived near the scene. When Bui arrived, she parked next to Turner's patrol car. When he had completed the vehicle search, Turner informed Bui and Kindred that he had finished the search but wanted Bui to search the women. Bui asked the men if they had any gloves, and Turner gave her the gloves he had used to search the vehicle.

At that point, Kindred asked Turner, "Do you want me to make this easier and go in the back?" Turner agreed that Kindred should stand behind the car. Kindred stood behind Turner's patrol car and can be seen in that position in the video. Turner told Hamilton: "[Bui] is going to search you, I ain't going to do that . . . cause I ain't getting up close and personal with your women areas." Turner and Kindred stood together behind the car while Bui performed the body cavity search. During the search, Turner told Kindred: "I don't know if she stuck something in her crotch or this one did."

2

No. 16-40611

After the search, Turner asked Bui if Hamilton had "[n]othing on her," and then requested she search Randle because "she is the one who had the zipper open." Hamilton immediately asked, "Do you know how violated I feel?" and said she felt so embarrassed. Turner replied that if they "hadn't had weed in the car they wouldn't be in this situation." Randle, who had been standing by Hamilton's car, was escorted to Bui's patrol car. Kindred was still standing behind Turner's vehicle. When Bui performed the body cavity search on Randle, Randle began to scream: "That is so fucked up! I am so done!" Hamilton yelled at her a couple times to "calm down" and "be quiet." Randle sounded as if she was crying when she again said, "Man, this is so fucked up!" After the searches were complete, Hamilton stated to Turner that "it was going to the extreme" to have someone "put their fingers up your stuff." In their complaint, Hamilton and Randle describe Bui's actions as "forcibly search[ing] in their vaginas and anus[es] against protest," and explain that the search was "physically and emotionally painful."

## B.    Procedural Background

Hamilton and Randle filed their complaint on June 27, 2013, asserting § 1983 claims against the officers involved and their employers. They alleged that the invasive cavity searches violated their Fourth Amendment rights to be free from unreasonable searches and seizures. Kindred moved for summary judgment, arguing that he was entitled to qualified immunity because at the time of the incident, bystander liability was not clearly established in the Fifth Circuit in cases not involving excessive force. The district court denied Kindred's motion for summary judgment on April 28, 2016. The district court found that the Plaintiffs had asserted an excessive force claim and that it was clearly established that bystander liability would apply. Additionally, the district court held that there was a "serious dispute as to material facts" in the

3

No. 16-40611

case regarding the objective reasonableness of Kindred's actions. Kindred timely appealed.

## II. DISCUSSION

We have jurisdiction to review a district court's denial of qualified immunity "only to the extent that the appeal concerns the purely legal question whether the defendants are entitled to qualified immunity on the facts that the district court found sufficiently supported in the summary judgment record." *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004) (en banc). "[W]e lack the power to review the district court's decision that a genuine factual dispute exists" and "instead consider only whether the district court erred in assessing the legal significance of conduct that the district court deemed sufficiently supported." *Id.* at 348. We review the district court's conclusion de novo. *Id.* at 349.

## A.    Excessive Force

Kindred first argues that the district court erred in allowing the Plaintiffs to go forward on an excessive force theory of liability. He argues that the Plaintiffs never pleaded excessive force. In qualified immunity cases, plaintiffs must "rest their complaint on more than conclusions alone and plead their case with precision and factual specificity." *Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003). "To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that she was seized." *Flores v. Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). The plaintiff must then "show that she suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Id.* We agree with the district court that Hamilton and Randle alleged facts in their complaint that meet this standard. The pleadings clearly stated that both Hamilton and Randle were seized during the course of the traffic stop when they were handcuffed and placed in patrol cars. They alleged

4

that they were detained for over thirty minutes and were subjected to invasive body cavity searches during that time in violation of the Fourth Amendment. The Plaintiffs asserted that there were no warrants or exigent circumstances allowing the searches. Furthermore, the Plaintiffs alleged injuries resulting directly from the cavity searches that took place during the detention.

Additionally, Kindred argues that excessive force does not apply to the facts of this case because "[e]xcessive force is a seizure, not a search." This argument is meritless. The Plaintiffs were clearly seized when they were placed in handcuffs and escorted to the patrol cars. Furthermore, excessive force applies because Hamilton and Randle have alleged that they were subjected to a use of force—the insertion of Bui's fingers into their vaginas and anuses—during the course of an investigatory stop. The Supreme Court has recognized that excessive force is unconstitutional during such a seizure. *Graham v. Connor*, 490 U.S. 386, 388 (1989) (holding that the Fourth Amendment protects against the use of excessive force during an "arrest, investigatory stop, or other 'seizure' of [the] person"). Likewise, "Fifth Circuit precedent [has] plainly established [that] . . . [a] strip or body cavity search raises serious Fourth Amendment concerns." *Roe v. Tex. Dep't of Protective & Regulatory Servs.*, 299 F.3d 395, 409 (5th Cir. 2002). *See also Martin*, No. SA-05-CA-0020, 2006 WL 2062283, at *5 (W.D. Tex. 2006) (cataloguing case law and finding no reasonable officer would have found a roadside body cavity search reasonable even if they "reasonably suspected that Plaintiff was concealing contraband in a body cavity" if "there were no exigent circumstances requiring the search to be conducted on the public roadside rather than at a medical facility"). Plaintiffs have alleged facts showing they were subjected to an unreasonable use of force excessive to its need. Therefore, the district court did not err in determining that excessive force was a viable theory in this case.

No. 16-40611

Finally, Kindred contends that even if excessive force applies, the Plaintiffs abandoned it as a theory of liability. In support, Kindred points to statements the Plaintiffs made that suggest they were not asserting an excessive force claim. In particular, in their response to Kindred's motion for summary judgment, the Plaintiffs stated that "'excessive force' is not an element of 'bystander liability' but a cause of action, and the Defendants cannot choose which causes of action for Plaintiffs to plead in a suit against Defendant." Additionally, when the Plaintiffs submitted proposed jury instructions, those instructions explicitly stated that "excessive force does not apply in this case."

Judge Hanks held a lengthy hearing on this issue on February 9, 2016. At that time, "counsel for Hamilton and Randle unequivocally stated that they [had] not abandoned their bystander liability claim under an excessive force theory." Kindred argued that the Plaintiffs' vague arguments "show an obvious intent to remove excessive force from this case," but he was unable to point to an exact document in the record evidencing waiver. After reviewing the pleadings and motions and hearing argument from the parties, the district court noted that the pleadings exhibited a lengthy and "rather confusing debate . . . as to whether excessive force is an essential element of a bystander liability claim or a separate cause of action, whether bystander liability can be based on theories other than excessive force, and whether Hamilton and Randle have a claim for 'direct' liability." But the district court concluded that the excessive force claim had not been waived.

After reviewing the record, we agree with the district court's determination. While the Plaintiffs never used the words "excessive force" in their complaint and were less than clear during the proceedings about exactly which theories they were advancing, the district court did not err in finding that excessive force had not been waived. Throughout the case, Plaintiffs have

clearly argued that they were subject to an unreasonable search and seizure in violation of the Fourth Amendment, and have alleged facts that support a claim for excessive force.

## B.    Bystander Liability

Kindred argues that the district court erred in denying summary judgment because even if bystander liability applied in this case, there is no genuine issue of material fact as to the elements of bystander liability. In *Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013), this Court stated that "an officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 646 (quoting *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 (4th Cir. 2002)). At the time of the incident, it was clearly established in the Fifth Circuit that an officer could be liable as a bystander in a case involving excessive force if he knew a constitutional violation was taking place and had a reasonable opportunity to prevent the harm. *See Hale v. Townley*, 45 F.3d 914, 918 (5th Cir. 1995). And "[o]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Roe*, 299 F.3d at 409 (quoting *Hope v. Paltzer*, 536 U.S. 730, 741 (2002)).

The district court found that "there [was] a serious dispute as to the material facts" regarding each element of bystander liability. We lack jurisdiction to review the district court's determination that a genuine factual dispute exists. *Kinney*, 367 F.3d at 347–48. Because we find that excessive force applies in this case and disputes of material fact remain, Kindred's appeal is DISMISSED.