# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 6, 2025

Lyle W. Cayce
Clerk

_____

No. 24-60208

_____

Estate of La'Mello Parker; L. S., *a minor*, *by and through Kevin Smith his next friend, individually and on behalf of all entitled to recover*,

*Plaintiffs—Appellants*,

*versus*

Mississippi Department of Public Safety; Troy Peterson, *Harrison County Sheriff, in his individual and official capacities*; Harrison County, Mississippi; Chris Allen, *Harrison County Deputy, in his individual and official capacities*; Harry Moskowitz, *Harrison County Deputy, in his individual and official capacities*; City of Gulfport, Mississippi; Michael Moran, *Gulfport Police Officer, in his individual and official capacities*; John Doe, *Mississippi Highway Patrol Troopers 1–8, in their individual and official capacities*; John Does, 1–75,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:23-CV-185

_____

Before Stewart, Clement, and Willett, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

Three-month-old La'Mello Parker died in the crossfire of a volatile and deeply tragic confrontation. His father—a fugitive wanted for double

No. 24-60208

homicide—held La'Mello in his arms as a human shield and opened fire on law enforcement. Officers returned fire, with a single bullet striking and killing La'Mello, ending his life before it had truly begun.

Acting as representatives, La'Mello's grandfather and brother filed suit against law enforcement at every level—city, county, and state—alleging constitutional violations under 42 U.S.C. § 1983 and claims under Mississippi tort law. The district court dismissed the case in full, concluding that the officers' actions during the fast-moving hostage crisis—while devastating in consequence—did not amount to constitutional wrongdoing, and that qualified immunity shielded the officers from suit.

However distressing the facts, constitutional liability requires more than tragedy—it requires a legal wrong. And in moments of split-second peril, that standard is exacting. The district court found no violation. Neither do we.

We AFFIRM.

I

A

The facts are both harrowing and heartbreaking.

On May 3, 2021, law enforcement responded to a shooting in Baker, Louisiana. Two individuals had been fatally shot, and a baby—La'Mello Parker—was missing. The initial investigation identified La'Mello's father, Eric Smith, as the suspected shooter and kidnapper.

A warrant was issued for Smith's arrest, and law enforcement soon located him traveling eastbound on Interstate 10 near the Mississippi state line. Officers initiated pursuit and deployed spike strips to disable his vehicle. After driving over the spike strips and puncturing multiple tires near mile marker 11, Smith pulled over, exited the vehicle with La'Mello pressed to his

chest, and fired a round at a Mississippi Highway Patrol trooper. No officers returned fire at that time.

Smith reentered his vehicle and continued east on I-10. More officers joined the pursuit, and they deployed additional spike strips near mile markers 29 and 31. Throughout the chase, officers remained in communication with Harrison County Dispatch, repeatedly confirming that Smith was armed, had already fired at law enforcement, and that an infant hostage was in the vehicle.

Farther ahead, officers established roadblocks at mile markers 41 and 44 and positioned snipers and a hostage negotiator. But before Smith could reach those roadblocks, Harrison County Deputy Chris Allen rammed Smith's vehicle from behind with his patrol car, pushing it into the median and disabling it.

Deputy Allen exited his vehicle and joined officers nearby. With their weapons drawn, officers surrounded Smith, who was still holding La'Mello. A few seconds later, Deputy Allen noticed that his K9 had exited the patrol car and went to retrieve it. As Deputy Allen pursued the dog, Smith lowered his car window and fired his handgun.

In response, at least ten officers—including Harrison County Deputy Harry Moskowitz, Gulfport Police Officer Michael Moran, a U.S. Marshall serving on a regional task force, and John Doe Mississippi Highway Patrol Troopers 1–8—opened fire. Tragically, one of the unidentified Mississippi troopers fatally shot La'Mello.

B

On La'Mello's behalf, his grandfather and brother (Plaintiffs) sued the Mississippi Department of Public Safety (DPS); Harrison County; the City of Gulfport; Harrison County Sheriff Troy Peterson, and Deputies

No. 24-60208

Chris Allen and Harry Moskowitz; Gulfport Police Officer Michael Moran; John Doe Mississippi Highway Patrol Troopers 1–8; and John Does 1–75. The complaint asserted claims under § 1983 for violations of La'Mello's Fourth and Fourteenth Amendment rights, based on both direct and bystander liability theories. Plaintiffs also brought state-law claims under the Mississippi Tort Claims Act against Mississippi DPS, Harrison County, and various individual officers, MISS. CODE ANN. § 11-46-11 *et seq.* In addition, they pursued *Monell* municipal-liability claims against Mississippi DPS, Gulfport, and Harrison County.[1]

Mississippi DPS moved for judgment on the pleadings; the remaining defendants moved to dismiss. The district court granted the motions in part and denied them in part.

First, the court held that Plaintiffs lacked standing to bring federal claims against the officers who fired their weapons but did not strike La'Mello—namely, Sheriff Peterson, Deputies Allen and Moskowitz, Officer Moran, and their respective employers, the City of Gulfport and Harrison County. Only the claim against Deputy Allen and Harrison County for ramming Smith's vehicle survived the standing inquiry.

Next, turning to the merits, the district court concluded that none of the officers violated La'Mello's constitutional rights. The officers were entitled to qualified immunity, the court held, as it was not excessive for Deputy Allen to use his patrol car to stop Smith, or for officers to "fir[e] their service weapons to defend against and subdue Smith, a murderer who had just fired first at law enforcement." And even assuming a constitutional violation, the court found that the right was not clearly established.

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978).

4

No. 24-60208

The district court also dismissed Plaintiffs' Fourteenth Amendment claims, reasoning that the alleged conduct was more properly evaluated under the Fourth Amendment. But in any event, it held that the officers' "actions of returning fire at an armed and dangerous suspect d[id] not shock the conscience" in violation of the Fourteenth Amendment.

Finally, the district court dismissed Plaintiffs' bystander liability and *Monell* claims for failure to allege an underlying constitutional violation. The court also declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims.

Plaintiffs timely appealed.

## II

We review de novo the district court's dismissal under Rule 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" [2] A plaintiff's factual allegation must "raise a right to relief above the speculative level." [3] At this stage, we accept all well-pleaded facts as true and construe them in the light most favorable to Plaintiffs. [4]

We apply the same standard when reviewing a judgment on the pleadings. [5]

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[3] *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023).

[4] *Id.*

[5] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) ("A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6).").

No. 24-60208

We likewise review de novo the district court's dismissal for lack of standing, again accepting all well-pleaded allegations as true and viewing them in the light most favorable to Plaintiffs.[6]

### III

Because standing is a jurisdictional prerequisite, we begin there.[7]

To establish standing, Plaintiffs must show (1) an injury in fact, (2) fairly traceable to the conduct of the defendant officers, and (3) likely to be redressed by a favorable judicial decision.[8] There is no dispute that La'Mello and his family suffered an obvious injury—one that is plainly redressable through damages under § 1983. The only question, then, is traceability.

Plaintiffs assert two constitutional claims of excessive force under the Fourth and Fourteenth Amendments: (A) the fatal shooting of La'Mello, and (B) the forcible ramming of Smith's car. The district court found that Plaintiffs lacked standing to pursue the former but had standing as to the latter. That was error. Plaintiffs have standing to pursue both.

### A

First, as to the shooting: The district court held that La'Mello's death was not fairly traceable to the defendant officers or their employers because

---

[6] *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 513 (5th Cir. 2017); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

[7] *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989).

[8] *Book People, Inc. v. Wong*, 91 F.4th 318, 328 (5th Cir. 2024) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

none of the named officers fired the single shot that killed him.[9] Plaintiffs do not dispute that ballistics testing confirmed only one bullet struck La'Mello—and that it came from Doe Trooper 1. Nor do they dispute that neither Peterson nor Allen discharged their weapons that day. But the traceability analysis does not end with the identity of the shooter. La'Mello's injury may be fairly traced to the conduct of other officers in two ways: (1) through their alleged bystander participation in Doe Trooper 1's use of excessive force, and (2) through their affirmative conduct in escalating the confrontation and creating the conditions that led to the fatal shot. Either theory is sufficient to establish traceability—and thus standing—at the pleading stage.[10]

1

Plaintiffs allege that the officers harmed La'Mello not only by firing their weapons but also by failing to prevent the final shot. According to the complaint, the officers "had a duty to prevent the others from depriving La'Mello of his civil rights and refused to do so." Under this bystander-liability theory, the officers' *inaction* contributed to La'Mello's death.[11] On

---

[9] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (To establish standing, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (cleaned up)).

[10] To bolster their standing argument, Plaintiffs lean heavily on *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985). But the district court was right to find *Grandstaff* inapposite. There, police officers—mistaking the decedent for an armed suspect—shot him multiple times. *Id.* at 165. Because the identity of the officer who fired the fatal shot remained unknown, we held that all the officers who opened fire were liable. *Id.* at 168. That key factual distinction renders *Grandstaff* a poor fit here. Plaintiffs themselves allege that a single officer—Doe Trooper 1—fired the shot that struck and killed La'Mello. *Grandstaff* therefore weakens, rather than supports, their standing argument. Still, for the two independent reasons that follow, we conclude Plaintiffs do have standing.

[11] *See Swofford v. Eslinger*, 671 F. Supp. 2d 1289, 1308 (M.D. Fla. 2009) ("[E]ven if a jury finds that none of the rounds discharged by Defendant [officer] struck [the victim],

that view, it is immaterial whether a given officer fired at La'Mello or struck him. What matters is that Doe Trooper 1's bullet caused the injury, and the other officers allegedly stood by and let it happen. That chain of causation is sufficient to establish traceability. Plaintiffs therefore have standing to bring bystander-liability claims against the named defendant officers and their respective employers.[12]

2

In addition to their bystander theory, Plaintiffs plausibly allege that La'Mello's injury was caused, at least in part, by the officers' conduct leading up to the shooting. However attenuated, that causal link suffices to establish traceability for purposes of standing.

To establish traceability, Plaintiffs must show "a causal connection between the injury and the conduct complained of"—that is, the injury must be fairly traceable to the defendant's challenged conduct, and not the result of an independent action by a third party not before the court.[13] Unlike tort

---

Defendant [officer] could still be liable if the jury finds that he failed to take feasible steps to protect [the victim] from [another officer's] use of force . . . .").

[12] Courts have consistently recognized that an officer's liability does not hinge on pulling the trigger. *See Murray-Ruhl v. Passinault*, 246 F. App'x 338, 347–48 (6th Cir. 2007) (considering a bystander-liability claim against an officer who never fired a shot); *Valdez v. Macdonald*, 66 F.4th 796, 833–34 (10th Cir. 2023) (implicitly acknowledging the possibility of a failure-to-intervene theory even where no evidence linked the defendant officer to the shot that injured plaintiff); *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (finding a constitutional claim against an officer whose shot missed based on his failure to protect the plaintiff from another officer's excessive force).

[13] *Lujan*, 504 U.S. at 560; *see also Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 784 (5th Cir.) ("To establish traceability, Plaintiffs must show a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." (quotations omitted)), *cert. denied sub nom. Nat'l Press Photographers Ass'n v. Higgins*, 145 S. Ct. 140 (2024).

law, Article III causation imposes no stringent or inflexible standard.[14] Indeed, "an indirect causal relationship will suffice"[15] for standing, and plaintiffs may satisfy the requirement by alleging "a chain of causation between defendants' [conduct] and plaintiffs' injuries."[16] It is often enough that the defendant's conduct was one of multiple contributing causes.[17] And "the fact that the defendant is only one of several persons who caused the harm does not preclude a finding of causation sufficient to support standing."[18] Even an uncertain or indirect causal connection may suffice at the pleading stage.[19]

---

[14] *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct."); *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 384 (2024) (analogizing "causation in standing law" to "causation in tort law"); *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997) (noting that proximate cause is not equivalent to whether an injury is traceable to the defendant for standing purposes); *Comer v. Murphy Oil USA*, 585 F.3d 855, 864 (5th Cir. 2009) (Causation "need not be as close as the proximate causation needed to succeed on the merits of a tort claim.").

[15] *Comer*, 585 F.3d at 864; *see also Jackson v. Wright*, 82 F.4th 362, 369 (5th Cir. 2023) ("[A]ll [plaintiff] needs to allege under Article III is that his . . . injuries are 'fairly traceable' to the . . . defendants—not that the . . . defendants directly caused his injuries."); *Warth v. Seldin*, 422 U.S. 490, 504 (1975) ("The fact that the harm to petitioners may have resulted indirectly does not in itself preclude standing.").

[16] *Comer*, 585 F.3d at 864.

[17] *Id.* at 866.

[18] *Id.* (quoting 15 James Wm. Moore et al., Moore's Federal Practice § 101.41[1] (3d ed. 2008)).

[19] 13A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3531.5 (3d ed. 2025); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . . ." (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 n.8 (2d ed. 1990))).

No. 24-60208

Plaintiffs have cleared this low causation bar at the standing stage. Even if Doe Trooper 1's bullet was the most immediate cause of La'Mello's death, Plaintiffs allege that the conduct of the other officers was an additional, indirect cause. According to Plaintiffs, the officers "dangerously escalated the situation leading to La'Mello's death, and pointed their weapons at him needlessly, and opened fire on him when it was completely unnecessary." These actions, Plaintiffs allege, "spurred Trooper Doe 1 to pull the trigger," and he "actually struck La'Mello with a bullet and killed him." However attenuated, this remains a plausible chain of causation. Whether that chain is strong enough to sustain a cause of action remains to be seen. But for purposes of standing at the pleading stage, it is enough.[20]

\* \* \*

Plaintiffs have plausibly alleged that La'Mello's injury is "fairly traceable" to the defendant officers' failure to intervene—and to their conduct leading up to the fatal shooting. La'Mello's injuries were not merely "the result of the independent action" of Doe Trooper 1.[21] Accordingly,

---

[20] We have never squarely addressed standing in a § 1983 excessive-force case like this one. But we have implicitly assumed standing and proceeded to analyze qualified immunity in at least one such case where the officer pointed his firearm—but did not discharge it. *Pigott v. Gintz*, No. 23-30879, 2024 WL 5087911, at *7–9 (5th Cir. Dec. 12, 2024) (per curiam). Other circuits have likewise proceeded to assess excessive-force claims against officers whose shots missed the plaintiff, without pausing to question standing. *See, e.g.*, *Floyd*, 518 F.3d at 406–07 (holding that an officer whose shot missed could be directly liable because his use of excessive force escalated the situation and signaled to others that such force was justified, and because he "participated in the tactical decision" to confront the plaintiff); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 560–61 (1st Cir. 1989) (holding that all officers "who participated in the intervention could be deemed to be proximate causes of plaintiff's injuries" because they were "active participant[s]" in the "event that caused plaintiff's injuries"). While these cases analyze liability on the merits, not standing, their reasoning applies with even greater force at the standing stage, where the causation requirement is less exacting.

[21] *Lujan*, 504 U.S. at 560 (cleaned up).

No. 24-60208

Plaintiffs have standing to pursue federal claims arising from the shooting against the named officers—Sheriff Peterson, Deputies Allen and Moskowitz, and Officer Moran—as well as their respective employers, Harrison County and the City of Gulfport.

B

Second, as to Deputy Allen's ramming of Smith's car, the district court concluded that Plaintiffs had standing to sue both Deputy Allen and his employer, Harrison County. Notably, the defendants do not contest standing on this claim.

All three standing elements are satisfied: (1) La'Mello was fatally injured by Doe Trooper 1's gunfire; (2) that injury is traceable to Deputy Allen's act of "recklessly ramming the vehicle in which La'Mello was unrestrained," which Plaintiffs allege precipitated the shootout between Smith and law enforcement; and (3) a favorable judgment against Allen under § 1983 would redress that injury. Accordingly, Plaintiffs have standing to bring federal claims against Deputy Allen and Harrison County based on the ramming of Smith's vehicle.

IV

We next consider whether the district court correctly dismissed Plaintiffs' Fourth Amendment claims on the ground of qualified immunity.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights."[22] To overcome that shield, Plaintiffs must

---

[22] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Plaintiffs urge us to abandon the doctrine of qualified immunity, contending that it conflicts with the text and history of the Civil Rights Act of 1871. But they properly acknowledge that this argument is foreclosed by binding Supreme Court precedent. As we have said before, we are "middle-management

No. 24-60208

plead facts showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[23]

Plaintiffs allege that the officers used excessive force in violation of La'Mello's Fourth Amendment rights in two ways: (A) by shooting at him, and (B) by ramming Smith's vehicle. The district court held that in neither instance did Plaintiffs plead a violation of a clearly established constitutional right. We agree.

## A

### 1

We begin with the first qualified-immunity inquiry: whether the officers violated La'Mello's Fourth Amendment rights when they opened fire.

The Fourth Amendment guarantees the "right of the people to be secure ... against unreasonable ... seizures."[24] To state a Fourth Amendment excessive-force claim, a plaintiff must show two things: (1) a seizure occurred; and (2) the force used was unreasonable.[25]

The Supreme Court has explained that a Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement

---

circuit judges" who "must follow binding precedent." *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 346 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 414 (2024). While "[w]e readily acknowledge the legal, social, and practical defects of the judicially contrived qualified-immunity doctrine . . . we are powerless to scrap it." *Green v. Thomas*, 129 F.4th 887, 890 (5th Cir. 2025).

[23] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818).

[24] U.S. Const. amend. IV.

[25] *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989).

through means *intentionally applied*."[26] Neither our circuit[27] nor others[28] have definitively resolved whether a seizure occurs when law enforcement intentionally targets a suspect but unintentionally strikes an innocent hostage. But because the parties agree that La'Mello was seized when Doe Trooper 1 shot him, we assume—without deciding—that a seizure occurred, and proceed to consider whether the use of force was reasonable.[29]

An officer's use of force is unreasonable under the Fourth Amendment if the plaintiff shows: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[30] La'Mello's death plainly satisfies the

---

[26] *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Brower*, 489 U.S. at 596–97) (emphasis added).

[27] *See Singleton v. Casanova*, No. 22-50327, 2024 WL 2891900, at *17 (5th Cir. June 10, 2024) (unpublished) (explaining that "§ 1983 claims asserted against law enforcement officers for unintended injuries suffered by innocent hostages lack the willful detention required to establish a Fourth Amendment seizure" but recognizing that a seizure may occur if "an officer's intentional conduct . . . target[s] more than one person" or if an officer fires "indiscriminately" into a vehicle or home knowing that an innocent person is inside).

[28] *Compare, e.g.*, *Fisher v. City of Memphis*, 234 F.3d 312, 318–19 (6th Cir. 2000) (holding that a seizure occurred where an officer "intentionally applied exertion of force" toward the vehicle's driver and shot the passenger) *with Landol-Rivera v. Cruz Cosme*, 906 F.2d 791, 792, 795 (1st Cir. 1990) (finding no seizure where officers fired at a suspect driving with a hostage on his lap and an "errant bullet" struck the hostage because the officers' actions were not "directed toward" the hostage).

[29] *See Lytle v. Bexar County*, 560 F.3d 404, 410 (5th Cir. 2009) (proceeding to the reasonableness inquiry where the "parties [did] not dispute that . . . [innocent third party] was 'seized' within the meaning of the Fourth Amendment when [the officer's] bullet struck her").

[30] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)).

injury element. We therefore focus on the second and third elements, which "collapse into a single objective-reasonableness inquiry."[31]

To assess whether the force used was reasonable, we apply the factors outlined by the Supreme Court in *Graham v. Connor*: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight."[32] This analysis considers factors such as the time officers had to make decisions, whether the force used is "measured and ascending" in accordance with the suspect's aggression, whether the suspect signaled that he was armed, and whether he moved toward or away from law enforcement.[33]

We assess reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[34] And we are rightly hesitant to "second-guess[ ] a police officer's assessment, made on the scene, of the danger presented by a particular situation" from the calm remove of chambers.[35]

Under these standards, we cannot conclude that it was objectively unreasonable for the officers to return fire at Smith—even knowing there was a substantial risk they might strike La'Mello. Smith—who that very morning had murdered two people, opened fire on law enforcement, and abducted his

---

[31] *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018).

[32] *Deville*, 567 F.3d at 167 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[33] *Singleton*, 2024 WL 2891900, at *5.

[34] *Graham*, 490 U.S. at 396.

[35] *Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021) (cleaned up); *see also Graham*, 490 U.S. at 396 ("'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' . . . violates the Fourth Amendment." (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973))).

No. 24-60208

infant son—posed a grave and immediate threat to officers and to the public.[36] Ample precedent supports the reasonableness of using deadly force against an active shooter.[37] Although we have never addressed a case in which officers returned fire at an active shooter knowing they might strike an innocent bystander, we have granted qualified immunity in similar situations—where officers used deadly force with an innocent person in dangerous proximity.[38]

The officers' awareness of the high likelihood of striking La'Mello does not alter our conclusion. The use of force here satisfies the *Graham* factors, as well as broader principles that justify the use of deadly force. Beginning with the first *Graham* factor, officers were pursuing Smith for double homicide and the kidnapping of La'Mello—offenses both grave and violent. Second—and most critically in a deadly force case[39]—Smith posed a

---

[36] *See Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) ("An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm."); *see also Barnes v. Felix*, 145 S. Ct. 1353, 1356 (2025) ("To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment.").

[37] *See Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) ("[T]his court's cases hold that '[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others.'" (quoting *Manis*, 585 F.3d at 843)); *Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) (emphasizing that the suspect being armed is often the decisive factor in assessing the reasonableness of deadly force).

[38] *Harmon*, 16 F.4th at 1163–67 (granting qualified immunity to an officer who fired at a fleeing suspect despite the close proximity of an innocent passenger); *Harman v. City of Shannon*, 104 F. App'x 398, 399 (5th Cir. 2004) (per curiam) (granting summary judgment to officers who used deadly force against a vehicle rapidly approaching them, rejecting the plaintiff's excessive-force claim).

[39] *Singleton*, 2024 WL 2891900, at *12 n.17 ("When an officer uses deadly force, the second *Graham* factor is 'generally the most important.'" (quotations omitted)).

clear and immediate threat to the safety of officers and the surrounding public. Smith had already fired at law enforcement once and had just done so again. All this unfolded on open interstate. Westbound traffic was halted on I-10, and Smith could have, in seconds, turned his weapon on passing vehicles or reentered his car to resume the chase.[40] Even accepting Plaintiffs' claim that Smith fired only at Deputy Allen, the "tense and evolving factual circumstances" justified the officers' belief that Smith posed a continuing threat to them and to the public along the highway.[41] Third, Smith was actively evading arrest—fleeing and firing at law enforcement. That Smith had La'Mello in his arms does not alter the fact that each of the *Graham* factors weighs decisively in favor of the officers.

Nor does Plaintiffs' suggestion—that Deputy Allen created the danger necessitating deadly force—alter the analysis. As the Supreme Court recently clarified, the reasonableness of force "requires analyzing the 'totality of the circumstances,'"[42] including whether officers "allegedly created the danger necessitating deadly force."[43] To be sure, Deputy Allen ended the chase by ramming Smith's vehicle and exposed himself to gunfire

---

[40] *See Plumhoff v. Rickard*, 572 U.S. 765, 776–77 (2014) (holding that deadly force was reasonable where a suspect paused during a police chase, but "a reasonable officer could have concluded [that the driver] was intent on resuming his flight" and would "pose a deadly threat for others on the road"); *Scott*, 550 U.S. at 386 (noting that police terminating a car chase that "threatens the lives of innocent bystanders does not violate the Fourth Amendment").

[41] *Romero v. City of Grapevine*, 888 F.3d 170, 173–75, 178 (5th Cir. 2018) (holding that deadly force was reasonable where, following a police chase of a robbery suspect, the officer warned the suspect several times to keep hands visible, but the suspect failed to fully comply and approached the officer).

[42] *Barnes*, 145 S. Ct. at 1358 (quoting *County of Los Angeles v. Mendez*, 581 U.S. 420, 427–28 (2017)).

[43] *Id.* at 1360.

No. 24-60208

to retrieve his K9. And perhaps, but for those actions, the ensuing shootout might not have occurred. But it was Smith—not Deputy Allen—who created the encounter by opening fire, prompting the officers to respond in kind. That singular fact distinguishes this case from *Barnes*, where the officer invited danger by leaping onto a suspect's moving vehicle to prevent flight.[44] Here, Deputy Allen acted reasonably in seizing a safe opportunity to end a perilous pursuit.[45] It was Smith who turned the encounter deadly.[46]

The reasonableness analysis also considers how quickly officers resort to force,[47] and how close they are to the threat when doing so.[48] Both factors favor the officers here. Aware that a child's life was at risk, they did not rush to employ deadly force. When Smith fired at officers earlier, they held their fire and instead employed nonlethal measures—roadblocks, spike strips, and ramming his vehicle. Only after Smith fired again did the officers return fire. Deputy Allen was just fifteen feet from Smith's vehicle when he left cover—and Smith opened fire. At that moment, officers "did not have the luxury of engaging in negotiation or deliberation" to persuade Smith to put down his weapon or step away from La'Mello.[49] They returned fire swiftly, in direct

---

[44] *Id.*

[45] *See Pasco v. Knoblauch*, 566 F.3d 572, 580 (5th Cir. 2009) (acknowledging "the generally inherent danger that suspects fleeing from police in vehicles pose to the public—even when no bystanders or other motorists are immediately present" (citing *Scott*, 550 U.S. at 384–85)).

[46] *See, e.g.*, *Easom v. US Well Servs., Inc.*, 37 F.4th 238, 246 (5th Cir. 2022) (acknowledging that a proximate cause cannot be too attenuated from the result)

[47] *Harmon*, 16 F.4th at 1165.

[48] *Sanchez v. Edwards*, 433 F. App'x 272, 276 (5th Cir. 2011) (per curiam).

[49] *Harmon*, 16 F.4th at 1165.

17

response to Smith's own shot—more than what the law requires to justify deadly force.[50]

The tragic facts of this case make our conclusion difficult. We do not and cannot condone the shooting of an innocent child by law enforcement. But the law requires us to assess reasonableness from the vantage of a reasonable officer on the scene—not with the clarity of 20/20 hindsight. And from that perspective, we cannot deem it unreasonable for officers to return fire at an active shooter who had endangered both them and the public—even if, tragically, the shooter used an innocent child as a shield. To hold otherwise would risk discouraging officers from taking decisive action in active-shooter situations. Would it be preferable for officers to hesitate—to allow an armed assailant using an innocent shield to escape, risking still more potential lives? The officers here were forced to make that fraught moral judgment in the split second after Smith fired on one of their own—"in haste, under pressure, and . . . without the luxury of a second chance."[51] We cannot second-guess that decision after the fact—from the remove and repose of our chambers.[52] As the First Circuit has aptly observed:

> It is inevitable that the police response to violent crime will at times create some risk of injury to others, including innocent bystanders. We decline to hold that the mere presence of risk reflects a callous indifference to the constitutional rights of

---

[50] *See Ramirez v. Knoulton*, 542 F.3d 124, 130 (5th Cir. 2008) ("The Fourth Amendment does not require police officers to wait until a suspect shoots to confirm that a serious threat of harm exists." (quoting *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996))); *cf. Harmon*, 16 F.4th at 1165 (concluding that deadly force may be unreasonable when officers "deliberately, and rapidly, eschew lesser responses" despite the fact that "such means are not only plainly available but also obviously recommended by the situation").

[51] *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

[52] *Graham*, 490 U.S. at 396.

those individuals potentially harmed. Any other conclusion would both chill law enforcement officers in the performance of their duties and encourage hostage-taking and criminal activity in public settings so as to minimize police intervention.[53]

The officers' use of force, while tragic in consequence, was not excessive. They did not violate La'Mello's Fourth Amendment rights.

2

Even assuming a constitutional violation, the officers are entitled to qualified immunity because the unlawfulness of their conduct was not clearly established at the time.[54]

We have never held that returning fire at an active shooter who is holding a hostage constitutes a Fourth Amendment violation. And while plaintiffs need not identify "a case *directly* on point" in order to show the law was clearly established, they must provide "authority at a sufficiently high level of specificity" to put law enforcement officers on notice that such conduct "is definitively unlawful."[55]

Plaintiffs chiefly rely on *Coon v. Ledbetter*, which upheld a constitutional claim after an officer fired indiscriminately into a trailer, knowing the suspect's four-year-old daughter was inside.[56] But *Coon* turns on

---

[53] *Landol-Rivera*, 906 F.2d at 797; *see also Scott*, 550 U.S. at 385 (declining to adopt a rule that would create "perverse incentives" for fleeing suspects).

[54] *See Bailey v. Ramos*, 125 F.4th 667, 681 (5th Cir. 2025) (holding that even if a fact dispute existed as to whether the officer's actions were unlawful, the officer was nonetheless entitled to qualified immunity because the unlawfulness of conduct was not clearly established).

[55] *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

[56] 780 F.2d 1158, 1159–61 (5th Cir. 1986).

a critical distinction: The suspect there was no longer actively shooting when officers returned fire.[57] Here, by contrast, Smith had just fired at Deputy Allen and was visibly aiming his weapon through the vehicle window. The officers did not fire "indiscriminately"—they fired directly at Smith, who, tragically, was holding La'Mello in his arms. Smith's active use of deadly force at the moment officers fired back places this case outside *Coon*'s ambit. *Coon* therefore cannot provide the clearly established law necessary to overcome qualified immunity.[58]

Plaintiffs also cite *Grandstaff*, but it, too, is distinguishable. There, officers mistakenly shot and killed an innocent man, believing he was an armed suspect they were pursuing nearby.[59] We upheld a jury verdict finding that use of deadly force was unjustified.[60] But unlike the *Grandstaff* officers— who "poured their gunfire at the truck and into the [innocent] person" "without awaiting any hostile act or sound"[61]—the officers here fired only after Smith shot first. Moreover, the *Grandstaff* officers "showed no inclination to avoid inflicting unnecessary harm upon innocent people. They simply saw a target and fired."[62] Here, by contrast, the officers exercised restraint—holding their fire even after Smith shot at them once and only

---

[57] *Id.* at 1159–60.

[58] Even setting aside those key factual distinctions, *Coon* cannot provide fair warning to law enforcement that such conduct violates the Constitution. Our *Coon* decision reversed a § 1983 damages award based on improper jury instructions that "improperly blend[ed] simple negligence and the claimed deprivation of [a] constitutional right." *Id.* at 1162. As a result, neither the jury nor the court ever squarely addressed whether the officers' use of force was excessive under the Fourth Amendment. *Id.* at 1164.

[59] *Grandstaff*, 767 F.2d at 165.

[60] *Id.* at 168.

[61] *Id.*

[62] *Id.*

responding when he fired directly at Deputy Allen. The recklessness that doomed the officers' conduct in *Grandstaff* is absent here. That case thus cannot provide "clearly established law" rendering the officers' conduct unconstitutional.

In sum, no case cited by Plaintiffs—nor any precedent in this circuit— would have "provided 'fair warning' to the defendants 'that their alleged conduct was unconstitutional.'"[63] Accordingly, even if the officers' decision to fire at Smith while he held La'Mello constituted a constitutional violation, the law was not clearly established at the time of the incident—and qualified immunity applies.

B

Turning to the ramming of Smith's car, we again begin with the first qualified-immunity prong: whether the officers violated La'Mello's Fourth Amendment rights.

The ramming of Smith's car plainly constituted a seizure as to Smith.[64] But whether it also amounted to a seizure of La'Mello—who was not the intended target—is far less certain. Still, even assuming the ramming qualifies as a seizure of La'Mello, Plaintiffs' excessive-force claim falters for want of a critical element: injury.[65] Plaintiffs acknowledge that La'Mello sustained no injury from the ramming itself—only from the gunshot that

---

[63] *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (cleaned up).

[64] *See Brower*, 489 U.S. at 597 (explaining that if officer had sideswiped a fleeing vehicle during a pursuit, "the termination of the suspect's freedom of movement would have been a seizure"); *Pasco v. Knoblauch*, 566 F.3d 572, 582 (5th Cir. 2009) (granting qualified immunity to an officer who ended a chase by bumping the suspect's car off the road).

[65] *See Deville*, 567 F.3d at 167 (listing injury as first element of excessive force claim).

ultimately claimed his innocent life. To the extent Plaintiffs argue that the ramming escalated the confrontation, culminating in the fatal gunfire, that contention concerns the viability of their shooting claim—not the ramming itself. As discussed above, the officers are entitled to qualified immunity for the shooting.

Because Plaintiffs do not allege that La'Mello suffered any injury from the ramming, they have not shown that Deputy Allen used excessive force in violation of La'Mello's constitutional rights. Deputy Allen is therefore entitled to qualified immunity.

V

Plaintiffs alternatively argue that the officers' use of excessive force violated La'Mello's substantive due process rights under the Fourteenth Amendment. This argument fails for two independent reasons.

First, although excessive force claims may sometimes be brought under the substantive due process clause of the Fourteenth Amendment, they must be analyzed under the Fourth Amendment when that more specific constitutional provision applies. That is, when a particular amendment provides an explicit textual source of constitutional protection, "the claim *must* be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."[66] Accordingly, a due process claim is viable only when the alleged misconduct is "not susceptible to proper analysis" under the Fourth Amendment.[67] Here, because the parties do not dispute that a seizure occurred, the Fourth Amendment governs. That alone forecloses Plaintiffs' Fourteenth Amendment claims.

---

[66] *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997).

[67] *Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998).

Second, even if we assumed the Fourteenth Amendment applied, Plaintiffs' claims would still fail on the merits. The Fourteenth Amendment forbids any State from depriving a person of "life, liberty, or property, without due process of law."[68] The Supreme Court has made clear that only the most extreme use of force violates the Fourteenth Amendment—namely, actions that "can properly be characterized as arbitrary[] or conscience shocking."[69] This is a deliberately high bar. "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"[70] Conduct shocks the conscience only when it is "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency."[71] Indeed, "even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates" constitutional protections.[72] "A purpose to cause [the] harm is needed . . . ."[73] Nothing in the officers' conduct meets that demanding threshold.

Ramming a suspect's vehicle to end a pursuit is not the kind of arbitrary or conscience-shocking conduct the Constitution forbids. Nor do Plaintiffs allege that Deputy Allen intended to harm La'Mello when he rammed the car. They concede the act amounted, at most, to "reckless

---

[68] U.S. Const. amend. XIV, § 1.

[69] *Collins*, 503 U.S. at 128.

[70] *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins*, 503 U.S. at 129).

[71] *Id.* at 847 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)).

[72] *Id.* at 853.

[73] *Id.* at 854.

endangerment,"—conduct insufficient to state a Fourteenth Amendment violation.[74]

And although a closer call, firing at an active shooter using a human shield is likewise neither arbitrary nor conscience-shocking. Plaintiffs do not claim that officers intended to harm La'Mello. Their intended target was Smith. Even assuming the decision to fire was "precipitate recklessness," that is not enough. Recklessness, however tragic in outcome, does not meet the Fourteenth Amendment's demanding standard.[75] With the benefit of hindsight, one might question the officers' decision to fire when they did. But firing back at an active shooter who posed an immediate threat to officers and bystanders is not so indisputably "brutal" or "offensive" as to cross the constitutional line.[76] And in any event, Plaintiffs cite no precedent in our circuit clearly establishing that such conduct violates the Fourteenth Amendment.

The officers are therefore entitled to qualified immunity on Plaintiffs' Fourteenth Amendment claims.

## VI

In addition to their direct Fourth Amendment and Fourteenth Amendment claims, Plaintiffs assert bystander liability under § 1983 against

---

[74] *See id.* at 853.

[75] *See id.*

[76] *See id.* at 847; *see also Medeiros v. O'Connell*, 150 F.3d 164, 166–67, 170 (2d Cir. 1998) (holding that an officer's decision to fire at a suspect in vehicle also occupied by a hostage did not "shock the conscience"); *Landol-Rivera*, 906 F.2d at 796–98 (concluding that officers did not violate the hostage's Fourteenth Amendment rights by shooting at a suspect who held the hostage on his lap); *Cooper v. Rutherford*, 503 F. App'x 672, 673, 677 (11th Cir. 2012) (per curiam) (observing that no precedent clearly establishes that shooting at a suspect's car containing innocent hostages is conscience-shocking).

each individual officer and seek municipal liability under *Monell* against the Mississippi DPS, the City of Gulfport, and Harrison County. The district court properly dismissed both claims.

Both bystander liability and municipal liability require Plaintiffs to plead an underlying constitutional violation.[77] As discussed above, Plaintiffs have not plausibly alleged a violation of La'Mello's Fourth or Fourteenth Amendment rights. Accordingly, we agree with the district court that Plaintiffs' bystander-liability and municipal-liability claims fail.

## VII

La'Mello Parker's death is an unspeakable tragedy. And no outcome in this case can undo the anguish of a life cut short or ease the sorrow of those who mourn him.

La'Mello's family has standing to seek justice on his behalf against every officer involved in the tense and volatile sequence of events that culminated in the shooting. But the constitutional standards that bind us do not turn on hindsight or heartbreak. Judged from the perspective required by law—that of officers forced to make split-second decisions under threat of lethal violence—we cannot say their conduct was unconstitutional. Faced with an armed fugitive who had murdered two people, who posed a grave and immediate danger to officers and the public, and who despicably used his infant son as a shield—the officers' decision to return fire, though devastating in its consequence, was not unreasonable, nor did it rise to the level of conduct that shocks the conscience.

_____

[77] *See Hamilton v. Kindred*, 845 F.3d 659, 663 (5th Cir. 2017) (outlining the elements required to establish bystander liability under § 1983); *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2013) (reciting the elements necessary to plead municipal liability under *Monell*).

No. 24-60208

Bound by our controlling precedent, we therefore AFFIRM the district court's dismissal of Plaintiffs' claims.